# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| NORTHCON, INC., AN IDAHO CORPORATION; AND UNITED STATES OF AMERICA, FOR THE BENEFIT OF NORTHCON INC., AN IDAHO CORPORATION;<br><br>     Plaintiffs,<br><br>v.<br><br>ALPHA ENERGY AND ELECTRIC INC., A MISSOURI CORPORATION; AND AMERICAN CONTRACTORS INDEMNITY COMPANY, A CALIFORNIA CORPORATION;<br><br>     Defendants. | Case No. 4:18-00994-CV-RK |

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court, is Plaintiff Northcon, Inc. ("Northcon")'s motion for summary judgment (Doc. 39.) The motion is fully briefed. (Docs. 40, 41, 42, 43, 44, 45.) After careful consideration, and for the reasons discussed below, the motion is **DENIED.**

## Background

Northcon filed this action, alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit/unjust enrichment, payment bond claim pursuant to the Miller Act, 40 U.S.C. §§ 3131, 3133, and for attorney's fees and costs. (Doc. 1.) This case arises out of a general contractor-subcontractor relationship between Northcon and Defendant Alpha Energy and Electric, Inc. ("Alpha").

In July 2016, Northcon and Alpha entered into an agreement (the "Teaming Agreement") to submit a proposal to the United States of America ("Government"), through the Department of the Navy ("Navy"), for work on a project located at Kings Bay, Georgia. The objective of the Teaming Agreement was for Northcon and Alpha to join together, Alpha being the prime contractor, eligible for federal set aside work, and Northcon being the subcontractor, to bid and receive an award for a federal project in Georgia. If awarded the project, the Teaming Agreement required Alpha to enter a subcontract with Northcon.

On January 31, 2017, the Government, through the Navy, awarded Alpha a contract "for general construction, maintenance, repair and alteration of facilities . . . at Naval Submarine Base Kings Bay, GA." (Doc. 41-4[1].) On the same day, under the above-referenced contract, the Navy issued task order number ACQR4729840 ("Task Order") for work commonly described as the Office Re-Configuration Project, for the not-to-exceed amount of $1,705,584.00. (Docs. 41-5, 42-1.) In connection with the Task Order, as required by 40 U.S.C. § 3131, Alpha obtained a payment bond, #1000965498, issued by American Contractors Indemnity Company ("ACIC") in the penal sum of $1,705,584.00. (Doc. 41-6.) As a subcontractor to Alpha, Northcon is a beneficiary of the payment bond, within the class of persons protected by it, and proper claimant under it. (*Id.*)

After Alpha was awarded the project, a subcontract agreement ("Subcontract Agreement") was circulated between Alpha and Northcon. (Doc. 41-7.) At the time the Subcontract Agreement was circulated, it stated:

> Provide all electrical construction for the reconfiguration of building 6005 at Kings Bay Naval Station GA, including all material, labor and supervision as required by Alpha
>
> Cost $315,347.56
>
> Provide all communications construction for the reconfiguration of building 6005 at Kings Bay Naval Station GA, includes all material, labor and supervision as required by Alpha
>
> Cost $244,022.56

(Doc. 41-7, Attachment A.) However, the Subcontract Agreement was never signed. (Docs. 41-7, 42-1.) Nevertheless, the parties agree they entered a contractual relationship (though not necessarily governed by the terms of the Teaming or Subcontract Agreement), whereby Northcon was the subcontractor and Alpha was the prime contractor. (Docs. 41, 42-1.) The parties' dispute centers on the terms of the contractual agreement, primarily what Alpha was required to pay Northcon for its work on the project.

---

[1] The Court notes that some of the exhibit numbers do not correspond directly with the document number on the Court's electronic filing system. For purposes of clarity, the citations of the Court refer to the document number as presented on the electronic filing system, not necessarily the corresponding exhibit number. For example, Doc. 41-4 is exhibit three attached to document 41.

2

Northcon sent a final invoice to Alpha on June 30, 2018. (Doc. 43-2.) It sent a revised final invoice on February 19, 2019. (Doc. 43-3.) As of the date of the final invoice, Alpha had paid Northcon $553,435.84. (Doc. 43.) Then on November 19, 2019, Alpha paid Northcon $5,934.28, what it claimed was the remaining balance on the contract. (Doc. 42-1, 43.) To date, Alpha has paid Northcon, in total, $559,370.12.[2] (*See* Doc. 44, p. 5.) Northcon argues the contract price[3] was increased for additional work done by Northcon and/or for profit sharing[4]. (Doc. 40.)

## Legal Standard

"Summary judgment is required if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018) (quotation marks and citations omitted). In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the nonmoving party and giv[es] the nonmoving party the benefit of all reasonable inferences." *Id.* (quotation mark and citation omitted). At the summary judgment stage, the movant must "support" its motion either by "citing to particular parts of materials in the record" or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(c)(1). The nonmovant must then "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## Discussion

Northcon argues it should be granted summary judgment. The Court will discuss each of Northcon's arguments in turn.

## I. Breach of Contract

Under Missouri law[5], to establish a breach of contract cause of action, the moving party must satisfy the following elements: "(1) the existence and terms of a contract; (2) that plaintiff

---

[2] Some of that money was paid directly to another subcontractor instead of to Northcon. The other subcontractor had performed work for Northcon on the Kings Bay project. Instead of Alpha paying Northcon, who would then pay the other subcontractor, Alpha paid the other subcontractor directly, which counted as a credit towards the balance owed to Northcon by Alpha.
[3] In particular, Northcon argues modifications were made to the contract scope and cost by mutual consent. The alleged modifications involved $53,025.58 in additional labor and material. These additional costs also involved the labor of Perry Powell as well as doors, frames, windows, and hardware material.
[4] The additional profit sharing has been calculated by Northcon to be $50,423.72
[5] The parties agree Missouri law applies in this case.

performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 850 (8th Cir. 2014) (quoting *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010)).

The parties do not dispute the existence of a valid contract. (*See* Docs. 40, 43.) However, the terms of the contract are in dispute. (*Id.*) For instance, while Northcon argues the contract price was increased to account for additional building materials, labor, and/or profit sharing, Alpha contends the contract included no such provisions. Alpha argues that both the Teaming Agreement and the Subcontract Agreement provided a not-to-exceed fixed price and prohibited profit sharing. (*See* Docs. 41-2 and 41-7.) On the other hand, Northcon argues the contract could, and was, modified by mutual consent of both parties. (*See* Docs. 41-7, 41-9 to 41-31, 42-1.) The requirement of a written change order may be waived by presenting evidence of an oral agreement to the contrary. *Ken Cucchi Const., Inc. v. O'Keefe*, 973 S.W.2d 520, 525 (Mo. App. 1998). While this is true, the evidence presented by Northcon does not conclusively establish the parties agreed to the additional amounts now claimed by Northcon. In addition, the original Teaming Agreement and the subcontract agreement prohibited profit sharing. (Docs. 41-2 and 41-7.) While the parties had the option to orally modify the agreement by mutual assent, material issues of fact exist as to whether that occurred. Additionally, Mr. Okafor, Alpha's corporate representative, testified in his deposition that the additional amounts were never part of the contract. (Doc. 42-1, pp. 24, 82, 113, 138, 146, 199.) Finally, the final invoice sent to Alpha by Northcon did not include any amount of for "Net change by Change Orders." (Doc. 43-2.) Resolving all inferences in favor of Alpha, the non-moving party, genuine issues of material fact still exist as to whether the contract price was increased for additional building materials, labor, and/or profit sharing.

As to the $5,934.28, which Alpha admitted to, and paid, in its corporate representative deposition that it still owed Northcon (Doc. 42-1, p. 236-238), further development of the record is needed. Alpha contends the late payment was excusable because Northcon failed to timely submit its invoice to Alpha. (Doc. 43, p. 23.) Northcon, on the other hand, argues Alpha waived that argument by failing to assert it as an affirmative defense, and by accepting the invoices and writing a check to Northcon on November 19, 2019. (Doc. 44, p. 19.) While Northcon may have a valid argument, further development of the record will be necessary to determine if damages are owed, and if so how much damages will be owed. *See McLain v. Meier*, 612 F.2d 349, 356

(8th Cir. 1979) (discretion to deny summary judgment and further develop the record at trial); *Burlison v. Warner-Lambert Co.*, 842 F.2d 991, 992 (8th Cir. 1988) (same); *Taylor v. Truman Med. Ctr.*, No. 03-00001-CV-W-HFS, 2006 WL 2796389, at *3 (W.D. Mo. Sept. 25, 2006) (denying summary judgment, despite apparent deficiencies in the plaintiff's case, because the record was inconclusive). Therefore, summary judgment will be denied on this point.

## II. Quantum Meruit and Unjust Enrichment

To succeed on a quantum meruit cause of action, the claimant must prove the following elements:

> [1] [T]he plaintiff provided to the defendant materials or services at the defendant's request or with the acquiescence of the defendant, [2] that the materials or services had reasonable value, and [3] that the defendant, despite the demands of the plaintiff, has failed and refused to pay the reasonable value of such materials or services.

*Cnty. Asphalt Paving, Co., Inc. v. Mosley Constr., Inc.*, 239 S.W.3d 704, 710 (Mo. App. 2007) (quotation omitted). "The principal function of this type of implied contract is the prevention of unjust enrichment, and a claim for quantum meruit does not require the existence of an express agreement between the parties." *Id.* (quotation omitted). However, "Missouri law does not permit recovery in quantum meruit or unjust enrichment when the plaintiff's relationship with the defendant is governed by an existing contract." *32nd St. Surgery Ctr., LLC v. Right Choice Managed Care*, 820 F.3d 950, 957 (8th Cir. 2016) (citation and quotation omitted). Because it has not been determined whether the entire Northcon-Alpha relationship was governed by an enforceable contract, the Court cannot conclude Northcon is entitled to summary judgment on its quantum meruit or unjust enrichment claims. Therefore, summary judgment will be denied on these points.

## III. Payment Bond Claim – Miller Act, 40 U.S.C. §§ 3131, 3133

"Because subcontractors and suppliers are prohibited from imposing liens on governmental facilities, the Miller Act requires a prime contractor on a federal construction project to post a payment bond to protect 'all persons supplying labor and material in carrying out the work provided for in the contract.'" *U.S. ex rel. Country Boys Feed & Farm Supply v. Eickelmann*, No. 08-3429-CV-S-GAF, 2010 WL 750059, at *3 (W.D. Mo. Mar. 2, 2010) (quoting 40 U.S.C. § 3131(b)(2)). 40 U.S.C. § 3133(b)(1) provides a cause of action to contractors furnishing labor or material on federal projects:

> Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

Such an action must be "brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4). "The Miller Act is highly remedial and entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 124 (1974). To prevail on a claim under the Miller act, a plaintiff must prove four elements:

> (1) the materials were supplied in prosecution of the work provided for in the contract;
> (2) he has not been paid;
> (3) he had a good faith belief that the materials were intended for the specified work; and
> (4) the jurisdictional requisites were met.

*U.S. for Use & Benefit of Martin Steel Constructors, Inc. v. Avanti Constructors, Inc.*, 750 F.2d 759, 761 (9th Cir. 1984) (citing *United States ex. rel. Carlson v. Continental Casualty Co.*, 414 F.2d 431, 433 (5th Cir. 1969)).

Here, it is clear Northcon supplied materials and labor in the work provided for in the contract. (*See* Docs. 41-9 to 41-35.) Further, Northcon has a good faith belief the materials and labor were intended for the specific work and the jurisdictional requisites were met. (*Id.*; Doc. 1.) The only question then is whether or not Northcon was paid for such materials and labor. Northcon was paid, at least in part, for their work on the Kings Bay project. (Doc. 41-35.) However, Northcon claims the contract price was increased for the additional materials, labor, and/or profit sharing. As discussed, above, genuine issues of fact exist as to whether the additional terms and contract price were incorporated into, or modified, the contract price. Therefore, summary judgment must be denied on this point.

**IV.     Prompt Payment Act and Northcon's Entitlement to Interest Damages**

Pursuant to 31 U.S.C. § 3905(b), prime contractors with the federal government must include the following:

6

> **(1)** a payment clause which obligates the prime contractor to pay the subcontractor for satisfactory performance under its subcontract within 7 days out of such amounts as are paid to the prime contractor by the agency under such contract; and
>
> **(2)** an interest penalty clause which obligates the prime contractor to pay to the subcontractor an interest penalty on amounts due in the case of each payment not made in accordance with the payment clause included in the subcontract pursuant to paragraph (1) of this subsection—
>
>> **(A)** for the period beginning on the day after the required payment date and ending on the date on which payment of the amount due is made; and
>>
>> **(B)** computed at the rate specified by section 3902(a) of this title.

The Subcontract Agreement also states, "Prime Contractor shall pay Subcontractor within fourteen (14) calendar days of Prime Contractor's receipt from the Government for Billed Subcontract charges." Northcon sent a final invoice on June 30, 2018, to Alpha. (Doc. 43-2.) Then on February 19, 2019, Northcon sent a revised final invoice for the Kings Bay project. (Doc. 43-3.) Northcon argues it is entitled to penalty interest on either $53,025.58 or $50,423.72, the amount it claims is still unpaid. As discussed above, genuine issues of fact exist as to whether Northcon is entitled to those principal amounts. Thus, genuine issues of fact exist as to the interest amount as well. Regarding the undisputed amount that Alpha paid Northcon as stated in its corporate representative deposition, Alpha has claimed it is not required to pay additional amounts because Northcon failed to timely submit an invoice. (*See* Doc. 43, p. 23.) Northcon argues Alpha's argument of untimely submission was never pleaded by Alpha. As stated above, further development of the record is necessary.

On the other hand, the Court finds it probative to address one of Alpha's arguments. Alpha argues Northcon never pleaded a claim under the Prompt Payment Act in its Complaint. (Doc. 43, p. 23.) This argument fails. While Northcon did not plead a separate cause of action, Northcon specifically pleaded "Alpha is subject to the Prompt Payment Act," and that "Alpha failed and refused to promptly pay Northcon." (Doc. 1, ¶¶ 10, 15); *see also Anthony Allega Cement Contractor, Inc. v. Johnson Controls Fed. Sys./Versar, LLC,* No. CV 18-875-SRF, 2019 WL 1792201, at *8 (D. Del. Apr. 24, 2019) ("The PPA does not grant subcontractors a separate cause of action, beyond common law breach of contract, for violations of the required subcontract language." (citation and quotation omitted)). Northcon further pleaded interest penalties and costs.

(*Id.*, ¶ 22, 26, 34.)  Therefore, the Court, in its discretion, will deny summary judgment on this point.  *See McLain*, 612 F.2d at 356 (8th Cir. 1979).

V. **Amount of Damages and Attorney's Fees**

Because genuine issues of fact exist as to the terms, scope, and cost of the contract, the Court cannot determine if damages will be owed to Northcon.  Further, as the prevailing party has yet to be determined, attorney's fees cannot be awarded at this time.

## Conclusion

Accordingly, and after careful consideration, the motion for summary judgment (Doc. 39) is **DENIED.**

**IT IS SO ORDERED.**

                                      s/ Roseann A. Ketchmark
                                      ROSEANN A. KETCHMARK, JUDGE
                                      UNITED STATES DISTRICT COURT

DATED:  March 30, 2020